# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NOEL RIVERA,
*Plaintiff,*

v.

ANGEL QUIROS, et al.,
*Defendants.*

No. 3:23cv227 (OAW)

## <u>INITIAL REVIEW ORDER</u>

The plaintiff is a *pro se* sentenced inmate who is in the custody of the Department of Correction ("DOC") at MacDougall-Walker Correctional Institution ("MacDougall").[1] ECF No. 1.  On May 16, 2023, Plaintiff filed the operative amended complaint[2] alleging violations of 42 U.S.C. § 1983 against eight DOC employees in connection with his treatment at MacDougall and Hartford Correctional Center ("HCC"): Warden Dougherty, APRN Akina Richards, Dr. Pilah, Regional Chief Operating Officer Jennifer Cruz, Dr. Kevin McCrystal, Disability Rights Coordinator Colleen Gallagher, Nurse Supervisor Tawana, and CSW Madeline.  Plaintiff requests both damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners against a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a). Upon review, the court must dismiss a complaint, or any portion of a complaint, that is frivolous or malicious, that fails to state a claim upon which relief may be granted,

---

[1] The court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  The publicly available information on the DOC website shows that Plaintiff was sentenced on November 30, 2022, to a term of incarceration that has not yet expired.  *See* "Connecticut State Department of Correction: Inmate Information," available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=327592 [https://perma.cc/ZRB3-G7TZ] (last visited Jan. 31, 2024).

[2] Plaintiff filed a first amended complaint in March 2023, and then amended the complaint again thereafter in May 2023.  Although he did not seek leave before filing the second amended complaint, the court accepts the May filing as the operative pleading.

or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Accordingly, the court has reviewed all factual allegations in the amended complaint and has conducted an initial review of the allegations therein.

I.   **ALLEGATIONS**[3]

 The court will not exhaustively recount the allegations from the amended complaint but instead will summarize the alleged facts simply to provide context for this initial review.

Plaintiff has small bowel syndrome, a medical condition that began before his current incarceration.[4]  He asserts that he needs certain medicines and nutrients, and specifically, that he requires Total Parenteral Nutrition ("TPN"), which is a liquid that can completely replace any other form of diet, and which typically is administered to individuals who cannot absorb nutrients from food.[5]  TPN must be administered via specialized equipment through a peripherally-inserted central catheter ("PICC") line.[6]

On April 7, 2022, Plaintiff entered HCC on pretrial detention, where the medical staff was aware of a medical device in his chest,[7] and where he was placed in the infirmary for evaluation and treatment. Infirmary staff members were provided with Plaintiff's

---

[3] All factual allegations are drawn from the amended complaint and exhibits thereto and are considered true for the purpose of this initial review.

[4] Plaintiff's medical condition is not fully explained in the amended complaint itself, but additional detail can be found in the grievance forms attached thereto.  The court relies upon those attachments for clarity.

[5] *See* Mayo Clinic, "Home Parenteral Nutrition," available at https://www.mayoclinic.org/tests-procedures/total-parenteral-nutrition/about/pac-20385081 [https://perma.cc/7SKD-KMWM] (last visited Jan. 31, 2024).

[6] Generally, a PICC line "is a long, thin tube that's inserted through a vein in [an individual's] arm and passed through to the larger veins near [the] heart." Mayo Clinic, "Peripherally inserted central (PICC) line," available at https://www.mayoclinic.org/tests-procedures/picc-line/about/pac-20468748 [**https://perma.cc/SQM3-M5WE** ] (last visited Jan. 31, 2024).  It provides a "doctor access to the large central veins near the heart … [and is] used to give medications or liquid nutrition."  *Id.*

[7] It appears this device is the outlet for the PICC line.

diagnosis and treatment plan, but HCC did not have the correct equipment to provide him with TPN, and so Plaintiff was forced to do without it.[8]  Plaintiff claims that Dr. McCrystal should have done more to provide for his medical needs while he was at HCC.

Plaintiff was sent to MacDougall on December 8, 2022, where the medical facility also was not equipped to administer TPN.  He complains that Warden Dougherty, Dr. Pilah, and APRN Richards failed to make any effort to obtain the medicine or equipment despite his requests.  More specifically, he asserts that Dr. Pilah failed to consult with a gastroenterologist and ordered the removal of Plaintiff's PICC line without Plaintiff's permission and prior to Plaintiff being sufficiently recovered from his illness.  Plaintiff also asserts that APRN Richards denied him a bottom bunk pass, which he contends he requires because, as a result of his condition, he needs easy and frequent access to a toilet.  Finally, he asserts that Warden Dougherty was deficient in making the medical staff tend to Plaintiff's medical needs.

Plaintiff was discharged from the MacDougall infirmary in January 2023, which he asserts was premature.  He states that he is experiencing anxiety stemming from being in the general population, and that he has requested emergency mental health treatment on numerous occasions without receiving assistance.  CSW Madeline apparently responded to one request, but it is not clear what her response was.[9]

In January 2023, Plaintiff wrote to RCOO Cruz (who oversees the medical unit) about his medical condition and alleged denial of treatment.  He complains that she has

---

[8] Plaintiff actually asserts only that he was deprived of necessary treatment, but the court gathers that this is a reference to the TPN.

[9] Another nurse also apparently stated that she could only put him on medical watch, or that he could refuse housing.  As this nurse is not a party to this action, this detail is not relevant to this discussion.

permitted medical staff to act recklessly and dangerously, and that she has failed to provide the correct medical equipment or supplies for Plaintiff.

On February 12, 2023, Plaintiff requested a reasonable accommodation of a single cell due to his medical condition.  He claims that placing him on double-cell status puts him in danger and is a violation of his rights under the Health Insurance Portability and Accountability Act ("HIPAA") because he will have to explain his medical conditions to his cellmate, who is not a medical staff member.  Coordinator Gallagher denied his request.

On March 16, 2023, Plaintiff was called to the medical unit for his daily treatment and reported to the nurses that he had numbness in his right foot and leg and a painful, swollen wrist.  He was not examined until the next day, at which point he was sent to the emergency room.[10]  Plaintiff later wrote to Nurse Supervisor Tawana about the nurses' initial failure to provide Plaintiff medical treatment, but he never received a response.

In addition to damages, Plaintiff asks the court to order that he be provided with immediate medical care (as directed by his own gastroenterologist), a single cell,[11] a lower bunk pass, and a high protein diet.  He also asks the court to issue an order preventing removal of his PICC line.  In the alternative, he seeks to be released on medical parole due to the alleged lack of proper equipment to care for Plaintiff.

II.     **DISCUSSION**

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights

---

[10] Plaintiff also alleges that he was sent to the emergency room on April 5, 2023, but it is not clear why.
[11] Certain exhibits suggest that Plaintiff already may have a single cell, *see, e.g.,* ECF No. 14 at CM/ECF p. 195, but that is unconfirmed.  The court notes that it refers to the pagination supplied by the CM/ECF system because the amended complaint and exhibits are docketed as a single document.

under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  To prevail on his deliberate indifference claims, Plaintiff must allege facts that show both an objective and a subjective element.  More specifically, he must show (1) that he has a condition that poses an unreasonable risk of serious damage to his health (the objective element); and (2) that a defendant acted with deliberate indifference to that serious condition (the subjective element).  *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017).

Relevant to the objective element, "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).  Here, Plaintiff alleges that he had a serious condition requiring daily treatment through a PICC line and frequent toilet use, and emergency mental health needs.  For purposes of initial review, the court considers Plaintiff's allegations sufficient to satisfy the objective element.

With respect to the subjective element, Plaintiff's pleading burden depends upon his status as either a convicted prisoner or a pretrial detainee.  *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017).  Claims alleging deliberate indifference to health or safety are analyzed under the Due Process Clause of the Fourteenth Amendment when brought by pretrial detainees, *see id.* at 29, but are analyzed under the

cruel and unusual punishment clause of the Eighth Amendment when brought by a sentenced prisoner, *see Charles*, 925 F.3d at 85.  As Plaintiff's allegations span the period before and after his sentencing, his amended complaint raises claims under both the Fourteenth and the Eighth Amendment.

"[D]eliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind."  *Charles*, 925 F.3d at 86.  "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health."  *Id.* at 87 (emphasis in original).  Under the Eighth Amendment, a defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).  Under either the Eighth or the Fourteenth Amendment, a defendant's mere negligence is insufficient to support a deliberate indifference claim.  *See Charles*, 925 F.3d at 86; *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

Plaintiff's claims can be summarized as objecting to (1) the failure of medical personnel to ensure that he was housed in a single cell and that he slept on a bottom bunk; (2) the failure of medical personnel to properly treat Plaintiff; and (3) the failure of supervisors to ensure that their staff provided Plaintiff with his treatments.  The court will address each claim seriatim.

6

A.  **Denial of Single Cell and Lower Bunk Pass**

The court construes Plaintiff's amended complaint as raising a deliberate indifference claim against APRN Richards and Coordinator Gallagher for failing to provide him with a single cell, and against APRN Richards for also failing to provide him with a bottom bunk pass.

To the extent Plaintiff's request for a single cell is based upon privacy concerns, the court finds no cognizable claim in these allegations.  Plaintiff alleges that he requested a single cell as an accommodation so that he would not have to disclose his medical conditions to his cellmate in violation of his rights under HIPAA.  But HIPAA does not create a private right of action and cannot support a claim under section 1983.  *See Rogers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162(MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim.").

But to the extent these requests were based on Plaintiff's need to address the symptoms of his condition through frequent toilet usage, the court finds that Plaintiff has pleaded facts raising an inference that APRN Richards and Coordinator Gallagher knew of his need for frequent and easy access to a toilet, but acted with conscious disregard of this need, APRN Richards by denying him a lower bunk pass and a single cell, and Coordinator Gallagher by denying him a single cell.  This inference is sufficient to satisfy the subjective element, at least at this point in the litigation.  Accordingly, Plaintiff may proceed on his claims of Eighth Amendment violations against APRN Richards and Coordinator Gallagher in their individual capacities for damages.

B.  <u>**Denial of Medical Treatment and Supervisory Liability**</u>

There are two ways in which Plaintiff believes he was denied adequate medical treatment.  He clearly alleges that he sought emergency mental health services at MacDougall but did not receive aid.  And, though less clearly, he also asserts that the medical facilities at HCC and MacDougall failed to procure the equipment necessary to provide him treatment (and consequently, he was denied treatment).[12]  The court infers that these latter allegations all refer to the same thing: medical personnel's failure to provide Plaintiff with TPN through his PICC line.  Plaintiff also objects to Dr. Pilah's failure to consult with a specialist and his recommendation to remove the PICC line entirely.

With respect to his mental health allegations, Plaintiff asserts that he requested treatment related to his fears about being in general population.  He alleges that CSW Madeline responded to his inmate request, but he has not alleged any facts describing how she acted in conscious disregard to his serious mental health needs.  Thus, no facts support the subjective element of the claim.  Accordingly, the court must dismiss the Eighth Amendment claims against CSW Madeline as unsupported by the facts alleged.

Plaintiff's remaining claims regarding insufficient treatment appear to stem from his predicate dispute with prison medical staff.  A letter from Coordinator Gallagher which Plaintiff attached to his complaint states that the prison healthcare providers are advising him to remove the PICC line because it was not in use.  ECF No. 14 at CM/ECF p. 195.  Plaintiff also attached a response to a grievance that he filed, that states Plaintiff had gained weight since his incarceration and that his bloodwork was within normal limits, so medical staff questioned whether he still required the TPN.  *Id.* at CM/ECF p. 156.

---

[12] He also alleges that nurses did not promptly address his wrist and leg pain, but this appears to be predicate conduct only for his supervisory claims, which are addressed *infra*.

Thus, whether Plaintiff was deprived of necessary medications, whether the infirmaries should have procured the necessary machine to administer TPN, whether Dr. Pilah ought to have consulted with a specialist, and whether the PICC line ought to be removed, all appear to be questions of medical judgment, which cannot be the basis for a claim of deliberate indifference.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim" provided that "the treatment given is adequate[.]"); *see also Sires v. Berman,* 834 F.2d 9, 13 (1st Cir. 1987) ("We do not sit as a medical board of review.  Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").  It is well established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment."  *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

A medical provider may act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider has ulterior motives for doing so, such as an improper monetary incentive.  *Chance*, 143 F.3d 698, 703–704 (2d Cir. 1998); *see also Braham v. Perelmuter*, 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017) (denying summary judgment due to a genuine dispute over whether certain dental treatment "derived from sound medical judgment.").  Here, though, Plaintiff has not alleged facts to suggest that the medical decisions of the MacDougall and HCC medical staff were based on ulterior motives, nor has he alleged that any treatments he received were inferior or resulted in adverse health consequences.  Indeed, it appears from the exhibits that (thankfully) he is in good health at this time.

Accordingly, Plaintiff fails to show the subjective element for his claims of inadequate medical treatment, under either the Eighth or the Fourteenth Amendment standard, and the court must dismiss as not plausible the deliberate indifference claims against Dr. Pilah, Dr. McCrystal, and APRN Richards.

Finally, the court recognizes that a Section 1983 claim against a supervisor must allege that the supervisor personally engaged in violative conduct, *see Bennings v. Kearney*, 2 F. App'x 218, 220 (2d Cir. 2001) ("A viable § 1983 suit based on supervisory liability requires personal involvement by the defendant-supervisor."), and it is not clear that Plaintiff has done so here.  But even if he had, any such claims would have to be dismissed because Plaintiff has not alleged any ultimate failure to provide adequate medical services (which is the predicate for his supervisory claims).

### C. Official Capacity Claims Under Section 1983

The court construes Plaintiff's amended complaint also to assert Eighth Amendment claims against Defendants in their official capacities.

Any constitutional claims for money damages against the defendants in their official capacities are barred by the Eleventh Amendment since each defendant is a state employee.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court of the United States recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity, permitting a plaintiff to sue (for prospective injunctive relief) a state official acting in an official capacity who is sued for continuing violations of federal law.  *Id.* at 155–56; *see also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  Although Plaintiff plausibly alleged Eighth Amendment claims against certain defendants in their individual capacities arising from

deliberate indifference to his need for access to a toilet, he no longer is housed at MacDougall, and it appears that he has a single cell at his current facility. ECF No. 14 at 195. Accordingly, he cannot allege any ongoing constitutional violation. Any official capacity claims therefore must be dismissed.

### D. **Disability Discrimination**

The court also considers whether Plaintiff's allegations state any plausible claim for disability discrimination under either the Americans with Disabilities Act ("ADA") or the Rehabilitation Act ("RA"). The standards under Title II of the ADA and § 504 of the RA "are generally the same . . . ." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). [13] Each applies to state prisons and to state prisoners. *Id.*

It is clear, though, that "[n]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Plaintiff therefore cannot bring any ADA or RA claims against any of the defendants in their individual capacities. And as to official capacity claims, it is unsettled in the Second Circuit whether a plaintiff may assert damages claims under the RA or under Title II of the ADA against a state actor in his or her official capacity for conduct that does not also violate the constitution. [14]

---

[13] The only difference between the ADA and the RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). Where "distinctions between the statutes are not implicated," courts will "treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

[14] In *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), the United States Court of Appeals for the Second Circuit held that a private individual could bring an official capacity ADA claim for damages against a state official , but only when the conduct also violates the Equal Protection Clause of the Fourteenth Amendment. Thereafter, in *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court of the United States entertained, but specifically left open, the question of whether a Title II claim may proceed against a state official for conduct that violates the ADA, but not the Constitution. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 195 (2d Cir. 2015)

However, for purposes of initial review, the court will consider whether Plaintiff has alleged a plausible disability discrimination claim against Coordinator Gallagher in her official capacity for denial of his request for an accommodation, assuming such a claim is cognizable.

To establish a prima facie violation under Title II of the ADA or the RA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).  Neither the ADA nor the RA "applies to claims regarding the adequacy or substance of services provided by correctional departments . . . ." *Reese v. Breton*, No. 3:18CV01465(VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020).  Thus, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs*., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

The court accepts for purposes of initial review that Plaintiff is an individual with a qualifying disability,[15] and that he required an accommodation for his medical condition,

---

(discussing, but not answering, whether *Garcia* survived *Georgia*).  There is now a divergence in how district courts approach this issue.  *Id.*

[15] A "qualified individual with a disability" is defined as a disabled individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural,

specifically, frequent access to bathroom facilities, either through assignment to a single cell or a lower bunk.  At this early stage, the court permits Plaintiff to proceed on his ADA and RA claims for damages and injunctive relief against Coordinator Gallagher in her official capacity for her failure to provide those accommodations.

## ORDERS

Consistent with the foregoing, the court enters the following orders:

(1) Plaintiff may proceed on (i) his Eighth Amendment claims of deliberate indifference to his need for a single cell and lower bunk against APRN Akina Richards in her individual and official capacity; (ii) his Eighth Amendment claims of deliberate indifference to his need for a single cell against Colleen Gallagher in her individual capacity; and (iii) his ADA/RA claims for damages and injunctive relief against Coordinator Gallagher in her official capacity.  All other claims are DISMISSED.  The Clerk of Court is instructed to terminate Warden Dougherty, Nurse Supervisor Tawana, and CSW Madeline as defendants in this action.

(2) The Clerk shall please verify the current work address for Akina Richards and Colleen Gallagher with the DOC Office of Legal Affairs, mail to them at their confirmed address within **twenty-one (21) days** of this order, a waiver of service of process request packet containing the amended complaint (ECF No. 14), and also shall please report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.  If Defendants

---

communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  The ADA further defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(2)(A).

fail to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on any such defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall send a courtesy copy of the amended complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the amended complaint (either an answer or motion to dismiss) within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claim recited above.  Defendants also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this order.  Discovery requests need not be filed with the court.  Interim discovery deadlines established by the parties may be amended by their agreement without the need to seek court approval, so long as such extensions to not delay the deadline for completion of all discovery.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)  If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Electronic Filing Program ("The Program") when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on Defendants' counsel by regular mail.

(12) In light of this order, Plaintiff's Motion to Compel, ECF No. 16,[16] and Motion for Order, ECF No. 17,[17] are denied as moot.

---

[16] In this motion, Plaintiff asks for the defendants to be served and a deadline to respond to be imposed, which instructions are included in this order.

[17] In this motion, Plaintiff asks the court to order the defendant medical staffers to withdraw as his healthcare providers because they are denying his medical needs.  As discussed *supra*, the denial of treatment appears to be a legitimate medical judgment, which the court will not disturb.

**IT IS SO ORDERED** at Hartford, Connecticut, this 31st day of January, 2024.


_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE