**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NOEL RIVERA,<br>*Plaintiff*,<br><br>v.<br><br>ANGEL QUIROS, et al.,<br>*Defendants.* | No. 3:23cv227 (OAW) |

**INITIAL REVIEW ORDER**

Plaintiff, who is self-represented, initiated this action on February 22, 2023, when he still was in the custody of the Department of Correction ("DOC"). ECF No. 1. He thereafter amended his complaint twice, *see* ECF Nos. 11 and 14, and the court performed an initial review of the second amended complaint in accordance with 28 U.S.C. § 1915A(a), *see* ECF No. 18. Three claims survived initial review, and so the action progressed to service upon the remaining defendants. But before any of the defendants had appeared, Plaintiff moved to amend his complaint again, which motion the court granted. *See* ECF Nos. 26 and 28. He filed his third amended complaint shortly thereafter.

The third amended complaint clearly fails to comply with Federal Rule of Civil Procedure 8, which requires a pleading to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The narrative alone is 30 pages long, several times reciting medical notes verbatim from Plaintiff's health records, which he also attaches to his complaint. In total, the pleading is almost 1,500 pages long. This is reason enough to dismiss the entire complaint.

However, having reviewed the missive and all attachments thereto, the court finds it in the interest of judicial efficiency to proceed to initial review despite its deficiencies. This is because, despite the lengthiness of the third amended complaint, it does not alter the court's prior conclusions, except that the court now finds that some of the claims that previously were allowed to proceed now also must be dismissed.

## I. LEGAL STANDARD

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). To prevail on his deliberate indifference claims, Plaintiff must allege facts that show both an objective and a subjective element. More specifically, he must show (1) that he has a condition that poses an unreasonable risk of serious damage to his health (the objective element); and (2) that a defendant acted with deliberate indifference to that serious condition (the subjective element). *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017).

Relevant to the objective element, "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration,

or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). Here, Plaintiff alleges that he had mental health needs and a serious gastrointestinal condition requiring daily treatment and frequent toilet use. For purposes of initial review, the court considers Plaintiff's allegations sufficient to satisfy the objective element.

With respect to the subjective element, Plaintiff's pleading burden depends upon his status as either a convicted prisoner or a pretrial detainee. *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017). Claims alleging deliberate indifference to health or safety are analyzed under the Due Process Clause of the Fourteenth Amendment when brought by pretrial detainees, *see id.* at 29, but are analyzed under the cruel and unusual punishment clause of the Eighth Amendment when brought by a sentenced prisoner, *see Charles*, 925 F.3d at 85. As Plaintiff's allegations span the period before and after his sentencing, his amended complaint raises claims under both the Fourteenth and the Eighth Amendment.

"[D]eliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles*, 925 F.3d at 86. "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87 (emphasis in original). Under the Eighth Amendment, a defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263,

280–81 (2d Cir. 2006). Under either the Eighth or the Fourteenth Amendment, a defendant's mere negligence is insufficient to support a deliberate indifference claim. *See Charles*, 925 F.3d at 86; *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

## II. DISCUSSION

Given the length and detail of the third amended complaint, the court will not attempt to summarize all the factual allegations in one narrative. Rather, the court will rely upon its previous initial review order for details, and here will relate only those allegations relevant to any new claims that the court can glean from the newest pleading. It remains true, though, that Plaintiff's general complaint is that he received inadequate medical care while he was in DOC custody.

Several of Plaintiff's specific complaints already were deemed insufficient after initial review of Plaintiff's prior pleading, and nothing in the most recent complaint changes those conclusions. The court again rejects any claim predicated upon Defendants' failure to provide Plaintiff with Total Parenteral Nutrition ("TPN")[1] because Plaintiff's allegations reflect a mere disagreement in treatment plan, which cannot be the basis for a claim of deliberate indifference. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim" provided that "the treatment given is adequate[.]"); *see also Sires v. Berman,* 834 F.2d 9, 13 (1st Cir. 1987) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or

[1] TPN is a liquid that can completely replace any other form of diet. *See* Mayo Clinic, "Home Parenteral Nutrition," available at https://www.mayoclinic.org/tests-procedures/total-parenteral-nutrition/about/pac-20385081 [https://perma.cc/7SKD-KMWM] (last visited Sept. 5, 2025).

evidenced mere disagreement with considered medical judgment, we will not second guess the doctors."). It is well established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Though Plaintiff clearly wished for different treatment, there is nothing in the record to indicate that the treatment he received was inadequate.[2]

Plaintiff also complains of several violations of the Health Information Portability and Accountability Act ("HIPAA"). But, as noted in the court's previous initial review, HIPAA does not create a private right of action and cannot support a claim under § 1983. *See Rogers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162(MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim."). Any such claim therefore must be dismissed again.

Plaintiff also makes a number of additional ad hoc allegations of inadequacies that he contends are indicative of incompetence. These include (1) subpar daily care, (2) his contraction of illness due to the COVID-19 virus; (3) failure to transfer him to an infirmary for housing; (4) the several times he was transported to the University of Connecticut medical facility ("UConn"), and sometimes to the Emergency Department ("ED"), for treatment; (5) unsatisfactory administration of medication for his deep vein thrombosis; and (6) inconsistent access to a special high protein diet.

[2] Plaintiff asserts that a court ordered his continued use of TPN, but it is not clear that this assertion is accurate. The record indicates only that on several mittimuses for his remand to custody (issued April 7, 2022; May 20, 2022; June 30, 2022; and August 5, 2022), the issuing judge noted that Plaintiff would require medical attention. ECF No. 29-3 at 237; ECF No. 29-4 at 31, 53, and 55. These notations do not appear to amount to an order for DOC to administer TPN in the first instance, but even if they were construed as such, failure to comply with them is irrelevant to this discussion of constitutional compliance. The court therefore will not discuss these further.

None of these allegations, independently or in aggregate, can support a claim under § 1983. In the first instance, even accepting Plaintiff's conclusion that the medical staff treating him was incompetent,[3] mere negligence is not actionable in a § 1983 claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.); *Hernandez v. Keane*, 341 F.3d 137, 149 (2d Cir. 2003) (stating that "findings of negligence or malpractice" are irrelevant to the § 1983 inquiry). And none of the allegations shows anything greater than negligence, if they even show that.

With respect to his daily care, Plaintiff claims he did not always receive competent cleaning of his peripherally-inserted central catheter ("PICC") line, which he already had when he was taken into custody.[4] It had been used to administer his TPN, but as the DOC medical staff determined that he no longer required TPN, they recommended he have the line removed, and even made an appointment at UConn to do that, but Plaintiff refused the treatment.[5] While he retained the line, he required daily treatments to clean and flush it. He alleges that sometimes he had to show medical staff how to do this properly, and that some days he was not seen at all. But needing to show staff how to clean the PICC line at best shows negligence, and the record indicates that Plaintiff only complained of not being seen at all on a handful of days in June and August 2023. ECF

---

[3] There are specific allegations as to one doctor's difficulties with various licensing boards decades ago, but public information shows that he is fully licensed to practice medicine in Connecticut, and so the court will not address those allegations. *See* "Connecticut: License Lookup," available at https://www.elicense.ct.gov/Lookup/LicenseLookup.aspx (last visited Sept. 5, 2025).

[4] Generally, a PICC line "is a long, thin tube that's inserted through a vein in [an individual's] arm and passed through to the larger veins near [the] heart." Mayo Clinic, "Peripherally inserted central (PICC) line," available at https://www.mayoclinic.org/tests-procedures/picc-line/about/pac-20468748 [**https://perma.cc/SQM3-M5WE** ] (last visited Sept. 5, 2025).

[5] Plaintiff was charged $25 for the refusal, which apparently upset Plaintiff, but which does not implicate any federally-protected rights, and so the court will not discuss the charge further.

29-5 at 161, 165, 169.[6] Even accepting the allegation as true, the court cannot find that this oversight repeated so infrequently rises to a constitutional level of severity.

As to his contraction of the novel coronavirus, it appears that this allegation is related to his complaint of being housed in the general population, *see* ECF No. 29 at 11 (asserting that "the plaintiff should [have] been placed in a single air tight room . . . ."), and so the court will discuss these together. The record shows that Plaintiff was housed in a single cell from the time he initially was remanded to custody until December 8, 2022, when he was transferred to the infirmary at another facility. It appears that he contracted the coronavirus while in the infirmary at his new facility and immediately was sent to an isolation unit. ECF No. 29-4 at 155, 161, and 171. It is difficult to find even negligence in these allegations, but they certainly do not amount to a constitutional deprivation. And Plaintiff's contention that he ought to have had an air-tight room is patently frivolous and will not be discussed further.

Some of his housing concerns also appear to relate to his fear of being sent to shower with the general population. But the exhibits provided show that he was given a pass allowing him to shower at a different time than the other inmates. ECF No. 29-4 at 71–73. Plaintiff also complains about the medical supplies he was given to use when he showered, but again, the record shows his grievance to be unfounded. While it appears that initially he was given a weekly supply of small plastic bags and medical tape for this purpose, ECF No. 29-5 at 35, when he noted on May 25, 2023, that these were not working, he was given Aquaguard instead a few days later. *Id.* at 39. So there also can be no claim with respect to his showering in general population housing.

[6] Internal communications between corrections staff refutes Plaintiff's assertion. ECF 29-5 at 169.

With respect to the occasions Plaintiff was sent to outside medical facilities, these visits show only that he was being given all necessary treatment, even when what was required was beyond DOC's capabilities. On April 20, 2022, he was transported because he reported having chest pain and numbness in his leg. ECF No. 29-4 at 17. On April 22, 2022, he was brought for an appointment with gastroenterology, but due to concerns about his heart he also was sent to cardiology first. *Id.* at 217. On May 26, 2022, it appears that medical staff could not confirm in their daily treatment routine that his PICC line was in its proper place, and so he was brought back to the ED to check it (it was in its proper position). *Id.* at 33. On August 13, 2022, he again was transported to the ED because he had abdominal pain, where he was seen and treated. *Id.* at 57. On March 13, 2023, he went to an appointment to have his PICC line removed, but he refused the procedure. *Id.* at 195-197. On March 17, 2023, he went back to the ED for leg pain. *Id.* at 255.[7] On March 29, 2023, he was transported to have an endoscopy performed. ECF No. 29-5 at 5. He had another trip to the ED due to an issue with his PICC line on April 5, 2023. *Id.* at 7. On August 7, 2023, he returned to UConn for a follow-up with the gastroenterologist. ECF No. 29-6 at 14. And he returned to the ED again on November 13, 2023, to check the PICC line once more. *Id.* at 164. Never was Plaintiff held overnight.

It thus is clear from the record that DOC took Plaintiff's complaints about his health seriously, and not only made sure he saw a specialist for his gastrointestinal condition,

---

[7] Plaintiff apparently takes issue with the delay of a day getting him to the ED on this occasion. He asserts that he was seen for daily treatment on March 16, at which time he expressed other health concerns, so a nurse signed him up for emergency sick call the next day, at which time he was seen by a provider and sent to the ED. ECF No. 29-4 at 269. The court cannot conclude that this conduct rises even to negligence, but even assuming it did, Plaintiff's allegations do not show the nursing staff had the requisite knowledge or intent to support a § 1983 claim.

but also that he received emergency attention when he reported concerning symptoms. DOC even ensured appropriate upkeep of Plaintiff's PICC line even though the provider recommended having it removed entirely. There is no indication that any of these trips to UConn were the result of any incompetence, much less indifference, and they cannot be the predicate for any § 1983 claim.

Finally, with respect to his special diet, the exhibits provided show that after he was transferred between facilities, an issue with documentation led to a period of one week (June 17–23, 2023) where he was not provided with high-protein meals. ECF No. 29-5 at 67. And as to the purportedly poor administration of his medication, his only allegation is that sometimes medical call would not occur every twelve hours exactly, such that his twice-daily medication occasionally would be taken twice within eight hours, instead of once every twelve hours as prescribed. ECF No. 29-6 at 9. These failures also do not present a harm of objectively serious magnitude, and any claim predicated upon them must be dismissed.

The court previously permitted Plaintiff to proceed on claims that he was denied certain reasonable accommodations: single-cell status and a bottom-bunk pass. But the fulsome record now provided shows that Plaintiff asked for and was given a bottom-bunk pass. ECF No. 29-4 at 209–211.[8] So the court must conclude that this claim no longer passes initial review, and it must be dismissed as implausible.

The court also permitted Plaintiff to proceed on claims predicated upon the denial of his request for single-cell status under both § 1983 and the American with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). These are the only claims that survive this

[8] It appears he did not immediately learn he had the bottom-bunk pass, but lack of prompt notice that his request had been granted does not satisfy either the objective or subjective element of a § 1983 claim.

second initial review, though the current operative pleading contains no allegations that might sustain the claims against any medical personnel. The only individuals who denied him single-cell status are Defendants Gallagher and Guadarrama, and so the claim may proceed against them alone.

Given the number of times Plaintiff has amended the complaint, and his failure to adduce any additional facts that might support any of his other claims, the court declines to give him leave to amend his pleading any further. The amended complaint docketed at ECF No. 29 shall remain the final and operative complaint.

## ORDERS

Consistent with the foregoing, the court enters the following orders:

(1) Plaintiff may proceed on his Eighth Amendment claims of deliberate indifference to his need for a single cell against Colleen Gallagher and Warden Guadarrama in their individual capacities; and (iii) his ADA/RA claims for damages and injunctive relief against Colleen Gallagher and Warden Guadarrama in their official capacities. All other claims are DISMISSED. The Clerk of Court is instructed to terminate all named defendants except Warden Guadarrama and Colleen Gallagher from this action.

(2) The Clerk shall please verify the current work address for Warden Guadarrama and Colleen Gallagher with the DOC Office of Legal Affairs, mail to them at their confirmed address within **twenty-one (21) days** of this order, a waiver of service of process request packet containing the amended complaint (ECF No. 29), and also shall please report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendants

fail to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on any such defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall send a courtesy copy of the amended complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the amended complaint (either an answer or motion to dismiss) within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court. Interim discovery deadlines established by the parties may be amended by their agreement without the need to seek court approval, so long as such extensions to not delay the deadline for completion of all discovery.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

**IT IS SO ORDERED** at Hartford, Connecticut, this 5th day of September, 2025.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE